[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision by the defendant denying the plaintiffs' applications regarding a proposal to construct residential units on property comprising 2.39 acres. The appeal CT Page 16501 is taken pursuant to Connecticut General Statutes § 8-30g.
General Statutes § 8-30g provides in part as follows:
 Sec. 8-30g. Affordable housing land use appeals procedure. (a) As used in this section: (1) "Affordable housing development" means a proposed housing development (A) which is assisted housing or (B) in which not less than twenty-five per cent of the dwelling units will be conveyed by deeds containing covenants or restrictions which shall require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income or eighty per cent of the state median income, whichever is less, for at least thirty years after the initial occupation of the proposed development; (2) "affordable housing application" means any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing; (3) "assisted housing" means housing which is receiving, or will receive, financial assistance under any governmental program for the construction or substantial rehabilitation of low and moderate income housing, and any housing occupied by persons receiving rental assistance under chapter 138a or Section 1437f of Title 42 of the United States Code; (4) "commission" means a zoning commission, planning commission, planning and zoning commission, zoning board of appeals or municipal agency exercising zoning or planning authority; and (5) "municipality" means any town, city or borough, whether consolidated or unconsolidated.
 (b) Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, specified in subparagraph (B) of subdivision (1) of subsection (a) of this section, contained in the affordable housing development, may appeal such decision pursuant to the procedures of this section . . .
 (c) Upon an appeal taken under subsection (b) of this section, the burden shall be on the commission to prove, based upon the evidence in the record compiled before such CT Page 16502 commission that (1)(A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development or (2)(A) the application which was the subject of the decision from which such appeal was taken would locate affordable housing in an area which is zoned for industrial use and which does not permit residential uses and (B) the development is not assisted housing, as defined in subsection (a) of this section. If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence in the record before it.
 (d) Following a decision by a commission to reject an affordable housing application or to approve an application with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of the affordable dwelling units, the applicant may, within the period for filing an appeal of such decision, submit to the commission a proposed modification of its proposal responding to some or all of the objections or restrictions articulated by the commission, which shall be treated as an amendment to the original proposal. The filing of such a proposed modification shall stay the period for filing an appeal from the decision of the commission on the original application. The commission may hold a public hearing and shall render a decision on the proposed modification within forty-five days of the receipt of such proposed modification. . . .
 (f) Notwithstanding the provisions of subsections (a) to (e), inclusive, of this section, the affordable housing appeals procedure established under this section shall not be available if the real property which is the subject of the application is located in a municipality in which at least ten per cent of all dwelling units in the municipality are (1) assisted housing or (2) currently financed by Connecticut Housing Finance Authority mortgages or (3) subject to deeds CT Page 16503 containing covenants or restrictions which require that such dwelling units be sold or rented at, or below, prices which will preserve the units as affordable housing, as defined in section 8-39a, for persons and families whose income is less than or equal to eighty per cent of the area median income. The Commissioner of Economic and Community Development shall, pursuant to regulations adopted under the provisions of chapter 54, promulgate a list of municipalities which satisfy the criteria contained in this subsection and shall update such list not less than annually.
The court finds the following additional facts:
At the present time, 1,134 units or approximately 4.8 percent of the Greenwich housing constitutes affordable housing. The application that was denied was to construct a four story 92 unit senior housing complex known as "Quarry Ridge" on a 2.39 acre parcel of land. The plaintiffs' co-applicants to the defendant commission are Quarry Knoll II Corporation, a non-profit entity controlled by the Housing Authority of the Town of Greenwich, and Quarry Ridge, Greenwich LLC, a for-profit developer and the record owner of the property. The Housing Authority, through Quarry Knoll II Corporation, is the vendee under a contract to purchase the property from the owner/developer. In the event the decision of the commission is reversed, the subject property will be transferred from Quarry Ridge Greenwich LLC to Quarry Knoll II Corporation, the non-profit affiliate of the Housing Authority pursuant to their contract for sale.
The court finds that the plaintiff, Quarry Knoll II Corporation, and the plaintiff, Quarry Ridge Greenwich LLC, are both aggrieved for the purposes of this appeal since their application for an affordable housing development was denied. The court further finds that this application qualifies as an affordable housing proposal since the application exceeds the requirements of § 8-30g in three significant respects.
 1. Instead of requiring that the affordable units be restricted as such for at least 30 years, the plaintiffs have proposed that this be a perpetual restriction.
 2. Instead of reserving 25 percent of the 92 units, or 23 units, as affordable units, the plaintiffs have proposed 40 percent of the 92 units, or 37 units, as affordable. CT Page 16504
 3. Instead of renting the balance of the units (55 units) to individuals regardless of their financial circumstances, the plaintiffs voluntarily will rent those units only to individuals who qualify under federal home loan moderate income guidelines.
On February 5, 1998, Quarry Knoll II Corporation and Quarry Ridge Greenwich LLC, as co-applicants, filed the application with the commission for approval to construct the 92 unit senior housing complex. In the application, the plaintiffs requested the following approvals from the commission:
1. Preliminary site plan and special permit approval, pursuant to the building zone regulations of the Town of Greenwich.
2. A zone change for the site from the existing R-6 zone to the R-PHD-E zone (residential-planned housing development-elderly).
3. Municipal improvement ("MI") approval to permit the Housing Authority, through a related entity, to acquire the property for purposes of locating and operating the 92 unit housing development proposed by the plaintiff.
The defendant commission sets forth the following reasons as to why it claims the decision of the commission should be upheld:
 (1) [D]ue to plaintiffs' failure to exhaust administrative remedies, the court lacks subject matter jurisdiction over the municipal improvement portion of the appeal; (2) the access to the site is illegal, by reason of the plaintiff/developer's failure to obtain municipal improvement approval for the easement granted by the Housing Authority to the developer for access to the project; (3) the project jeopardized substantial public interests in health, safety and welfare, which public interests required protection from contaminated soils, polluted groundwater, unstable fill, hazardous traffic and insufficient parking; and (4) the substantial public interests clearly outweighed the need for affordable housing and could not be protected by reasonable changes to the Quarry Ridge development.
Reasons number 3 and 4 basically claim that the decision of the commission should be upheld as it has met its burden under § CT Page 165058-30g(c)(1).
These reasons will be discussed seriatim.
 I
THE COMMISSION'S CLAIM THAT DUE TO THE PLAINTIFFS' FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE MUNICIPAL IMPROVEMENT PORTION OF THE APPEAL.
Section 99 of the Town of Greenwich Charter requires approval from the commission for municipal improvement projects. Section 99 of the Charter provides as follows:
Sec. 99. Municipal improvements; approval.
 (a) After the passage of this Article no action, other than the making of studies or surveys, shall be taken by any Town agency, the Board of Education or the Housing Authority on any proposal involving;
 (1) The location, relocation, major redesign, extension or abandonment of any street or sewage disposal plant;
 (2) The acquisition of land for, or the location, relocation, abandonment, sale, lease or major redesign of public real property or public buildings, including schools;
 (3) The extent and location of transportation routes and terminals whether publicly or privately owned; or
 (4) The location of public housing projects. Until such proposal has been submitted to and approved by the Commission or has been approved by the Representative Town Meeting as herein provided. (S.A. 469 § 17, 1951.) [Emphasis provided.]
Section 100 of the Charter provides as follows:
 Sec. 100. Municipal, improvements; referral to Representative Town Meeting.
 (a) The failure of the Commission to act upon any proposal, submitted to it pursuant to Section 99 hereof, within ninety (90) days after such submission shall be deemed CT Page 16506 to constitute an approval thereof. The Commission may, by resolution adopted prior to the termination of the ninety (90) day period and for sufficient reasons to be stated in the resolution, defer approval for any length of time reasonably necessary. [Emphasis provided.]
 (b) In the event of the approval or deferment by the Commission of any such proposal, the Commission shall cause a notice of such action to be published in a news paper having a general circulation in the Town and the Town Agency, the Board of Education or the Housing Authority having original jurisdiction of the matter, or any person owning property within the Town, may, within thirty (30) days from the date of publication of such notice by the Commission, refer such proposal to the Representative Town Meeting. The Representative Town Meeting shall have power to approve such proposal or to reject it. [Emphasis provided.] (S.A. 469 § 18, 1951; as amended by RTM, 6/8/70.)
The defendant commission argues that:
 [A]lthough plaintiffs could have availed themselves of this appeal procedure to the RTM, they omitted this crucial step and appealed to the Superior Court. This omission is fatal to the plaintiffs' appeal from denial of the MI proposal. If an administrative remedy is available, it must be exhausted before an appeal can properly taken to the Superior Court. . . . A municipality is free, by local enactment, to authorized an intermediate appeal between the planning and zoning commission and the Superior Court. . . . As referral of the MI proposal to the RTM provides an available avenue of relief, that remedy must be exhausted before the appeal to the Superior Court. Conto v. Zoning Commission, 186 Conn. 106
(1982).
The court is not persuaded by that argument.
The Conto case has been distinguished in a number of subsequent decisions.
In Weinstein v. Zoning Board, 214 Conn. 400, 406-07 (1990), the court stated in part as follows:
 The present case is distinguishable from Conto in two significant respects. First, both the Stamford zoning board CT Page 16507 and its board of representatives act in their legislative capacities with respect to the amendment of zoning regulations, the subject of this litigation. Burke v. Board of Representatives, supra, 35-36, 38-41. The petition for referral to the board of representatives cannot, therefore, be characterized as an administrative remedy to which the exhaustion requirement would pertain. Second, we have previously held in Masone that the Stamford charter gave a "choice" of two alternative remedies, necessarily implying that a person aggrieved was free to elect between them and not have the "choice" made for him by others.
 We conclude that the zoning board of Stamford is the "final zoning authority" within the intent of 8-10 for those, such as the plaintiff, who have not exercised the alternative of petitioning for a referral to the board of representatives.[5] It is clear, therefore, that the plaintiff was entitled to appeal from the action of the zoning board to the Superior Court pursuant to 8-10.
Further, in Castellon v. Board of Zoning Appeals,221 Conn. 374 (1992), the court stated in part at pages 380 and 382-83:
 Finally, in Conto we concluded that neither General Statutes 8-9[7] nor General Statutes 8-10,[8] nor the two sections taken together, permit an aggrieved party direct access to the court when the local regulations provide for an intermediate appellate step between the commission and the court. Id., 115-18. We held that [s]ince the zoning commission's decision to issue a use permit was an enforcement action falling under 8-6, Washington is free to authorize an appeal of that decision to its zoning board of appeals by means of [zoning regulation] 18.1.1. Id., 117.
 Conto, therefore, turned on two critical factors: (1) our reading of the local regulations as vesting the enforcement power in the commission itself, rather than in a zoning enforcement officer. and thus the implicit designation by those regulations of the commission as the enforcement official within the meaning of 8-6; and (2) 18.1.1 of the Washington regulations, which specifically provided for resort to the zoning board of appeals to rectify an error in any order or decision made by the Zoning Commission or its Enforcement Officer. Neither of these factors is present in this case. . . . CT Page 16508
 Our conclusion is buttressed by the fact that we have routinely sanctioned similar direct appeals to the court from decisions of zoning and planning and zoning commissions without requiring prior resort to the local zoning boards of appeals. See, e.g., TLC Development, Inc. v. Planning Zoning Commission, 215 Conn. 527, 577 A.2d 288 (1990) (appeal from denial of site plan approval by Branford commission); Schwartz v. Planning Zoning Commission, 208 Conn. 146, 543 A.2d 1339 (1988) (appeal from denial of site plan approval by Hamden commission); Goldberg v. Zoning Commission, 173 Conn. 23, 376 A.2d 385 (1977) (appeal from denial of site plan approval by Simsbury commission); Marandino v. Planning Zoning Commission, 21 Conn. App. 421. 573 A.2d 768 (1990) (appeal from denial of site plan approval by Greenwich commission); Allied Plywood, Inc. v. Planning Zoning Commission, 2 Conn. App. 506, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984) (appeal from denial of site plan approval by South Windsor commission). These decisions implicitly recognize that the exhaustion requirement we perceived in Conto was a function solely of the particular regulations at issue there and is not, as the plaintiffs' argument suggests, required generally by General Statutes 8-6, 8-8,[10] 8-9 or 8-10.[11] [Internal quotation marks omitted; emphasis provided.]
This court concludes that since the Supreme Court has routinely sanctioned similar direct appeals from decisions of zoning and planning commissions without requiring prior resort to the local zoning board of appeals, so too should a direct appeal be sanctioned without requiring resort to the representative town meeting. The Castellon and the Weinstein decisions clearly demonstrate that Conto is to be limited on the facts of its particular regulation and does not require generally that an applicant resort to another local agency before taking a direct appeal from a decision of a planning commission. As a matter of fact, the Castellon decision specifically referred to Marandinov. Planning and Zoning Commission, 21 Conn. App. 421 (1990) which was an appeal from the denial of a site plan approved by the Greenwich Planning Commission as part of those cases in which the court has routinely sanctioned similar direct appeals without requiring prior resort to another local agency.
The plaintiffs' claim that the application for municipal CT Page 16509 improvement filed by them was automatically approved by the defendant commission for failure of the commission to act upon the proposal within ninety days after such submission.
In order to put this claim into context, it is necessary to review certain time periods that are involved:
1. The application for municipal improvement (MI) approval was filed with the defendant commission on February 5, 1998.
2. The next regular scheduled meeting of the defendant commission, subsequent to the filing of such application, occurred on February 24, 1998.
3. A notice was published in a local newspaper stating that "by resolution adopted May 12, 1998, the commission postponed a decision on plaintiffs' MI proposal until receipt of a final report from the Inland Wetland and Watercourse Agency. The defendant commission received the final report from the Inland Wetland and Watercourse Agency on June 26, 1998.
4. On June 30, 1998, the planning commission voted to reject all of the applications submitted to it by the applicants including the municipal improvement application.
The ninety days that the commission would have had to act upon the municipal improvement application would have expired on May 6, 1998 based on the date the application was filed on February 5, 1998. The ninety day period would have expired on May 25, 1998 based on starting the ninety day clock on the date of the first regularly scheduled meeting of the defendant commission following the filing of the application which was on February 24, 1998. Even if the ninety day period did not commence until February 24, 1998, there was still an automatic approval for failure to act within the meaning of § 100a of the Greenwich Charter for the following reasons. First, § 100(a) of the Greenwich Charter only gives the commission the power to deferapproval for any length of time reasonably necessary. By its own terms, it does not give to the commission the power to defer a disapproval. Since in this case the commission disapproved of the application, there was not a valid deferral. Secondly, even if the commission has the power to defer a disapproval, there would still have been an automatic approval in this case for failure to act within the time period required by § 100 of the municipal charter. In this case, the deferral resolution that was adopted CT Page 16510 was to postpone a decision on the plaintiffs' municipal improvement proposal until receipt of a final report from the Inland Wetland and Watercourses Agency. That report was received on June 26, 1998. Thus even if, as the commission argues, the ninety day period did not start until its next regularly scheduled meeting on February 24, 1998, it still failed to act on the municipal improvement proposal within the ninety day period as extended by the deferral resolution. The deferral resolution only deferred decision until the final report of the Inland Wetland and Watercourses Agency, which report was received on June 26, 1998. The commission did not render its decision until June 30, 1998. While conceivably the commission could have passed a resolution to postpone its decision on the plaintiffs' municipal improvement proposal until some specified length of time reasonably necessary after the Inland Wetland and Watercourses Agency report was received, it failed to do so. This court therefore concludes that there was an automatic approval of the plaintiffs' municipal improvement application by failure of the defendant commission to act in accordance with § 100 of the Charter. In addition, there has been approval of the municipal improvement application for reasons discussed further in III A of this decision regarding the initial disapproval by the commission on the initial application that was filed and for reasons stated in III B of this decision regarding the disapproval or the revised application filed by the plaintiffs.
 II
THE CLAIM THAT ACCESS TO THE SITE IS ILLEGAL, BY REASON OF THE PLAINTIFFS/DEVELOPER'S FAILURE TO OBTAIN MUNICIPAL IMPROVEMENT APPROVAL FOR THE EASEMENT GRANTED BY THE HOUSING AUTHORITY TO THE DEVELOPER FOR ACCESS TO THE PROJECT.
The court is not persuaded by that claim for the following reasons.
The court finds from the record the following facts regarding this claim. The contract for sale for the subject property between Quarry Ridge Greenwich LLC as owner of the property and Quarry Knoll II Corporation as the holder of the contract to purchase the property is contingent upon approval of the subject affordable housing application. In the event the application for affordable housing is approved, then title to the subject property will be transferred to Quarry Knoll II Corporation. Quarry Knoll II Corporation already owns the property adjoining CT Page 16511 the site in question. Thus, in the event the affordable housing application is granted, title to the subject site will be transferred to Quarry Knoll II Corporation and there is no need for an easement. At the present time, an easement does not exist and one will not be necessary for Quarry Knoll II Corporation to have access to the subject property if the affordable housing application is granted.
Therefore, it was not necessary for the plaintiffs to apply for any approval for an easement as part of the municipal improvement application. Further, for reasons stated in III A and III B of this decision, even if an easement was required, it was approved for failure to meet the standards of § 8-30g.
 III A
THE DEFENDANT'S CLAIM THAT THE PROJECT JEOPARDIZED SUBSTANTIAL INTEREST IN PUBLIC HEALTH, SAFETY AND WELFARE, AND THAT THE SUBSTANTIAL PUBLIC INTEREST CLEARLY OUTWEIGHED THE NEED FOR AFFORDABLE HOUSING
The court is not persuaded by that argument.
Under the provisions of § 8-30g (c)(1), the burden is "on the commission to prove, based upon the evidence in the record compiled before such commission that (A) the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record; (B) the decision is necessary to protect substantial public interests in health, safety, or other matters which the commission may legally consider; (C) such public interests clearly outweigh the need for affordable housing; and (D) such public interests cannot be protected by reasonable changes to the affordable housing development. . . ." If the commission does not satisfy its burden of proof under this subsection, the court shall wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence and the record before it.
In Christian Activities Council, Congregational v. TownCouncil, 249 Conn. 566 (1999) the court reviewed the procedure to be followed from an affordable housing land use appeal under §8-30g.
On the issue of burden of proof, the court stated in part as CT Page 16512 follows:
 The scope of judicial review under § 8-30g(c) requires the town, not the applicant, to marshal the evidence supporting its decision and to persuade the court that there is sufficient evidence in the record to support the town's decision and the reasons given for that decision. . . .
The court further held that the burden under subparagraphs (B)(C) and (D) of § 8-30g(c)(1) "is the same as under subparagraph (A), namely, to establish that its decision and the reason cited in support of that decision are supported by sufficient evidence in the record.
In addressing the burden of "sufficient evidence," the court further stated in part as follows:
 We further defined sufficient evidence in this context to mean less than a preponderance of the evidence, but more than a mere possibility. We stated that the zoning commission need not establish that the effects it sought to avoid by denying the application are definite or more likely than not to occur, but that such evidence must establish more than a mere possibility of such occurrence. . . . Thus, the commission was required to show a reasonable basis in the record for concluding as it did, [Internal quotation marks omitted.]
A mere possibility that a harm would result is not a sufficient ground to reject an application.
As stated in Christian Activities Council at page 589, the function of the court is as follows:
 Put another way, in determining whether the commission had sustained its burden under subparagraph (B) of establishing that its decision was necessary to protect substantial interests in health, safety, or other matters which the commission may legally consider, the court does not itself weigh the record evidence. Instead, the court applies the sufficient evidence in the record test of subparagraph (A). The court reviews the evidence and asks whether there was sufficient evidence for the commission, based on that evidence, reasonably to have concluded that there was some probability, not a mere possibility, that its decision was CT Page 16513 necessary to protect those interests. . . . [Internal quotation marks omitted; emphasis provided.]
 In other words, the court's task in determining whether the zoning commission has satisfied its burden under subparagraphs (C) and (D), is not to weigh the evidence itself. The court's task rather, is to review the evidence and determine whether, based upon that evidence, there was sufficient evidence for the commission reasonably to have concluded that: (1) the public interests that the commission sought to protect clearly outweigh the need for affordable housing; General Statutes § 8-30g (c)(1)(C); and (2) such public interests cannot be protected by reasonable changes to the affordable housing development. . . . [Internal quotation marks omitted; emphasis provided.]
The Christian Activities Council court further stated at page 597 in part as follows:
 Pursuant to subparagraph (C) of § 8-30g (c)(1), the defendant must establish that there was sufficient evidence in the record for it reasonably to have concluded that the public interest . . . clearly outweigh[ed] the need for affordable housing. . . . [Internal quotation marks omitted; emphasis provided.]
This court concludes that the requirement for the commission "to have reasonably concluded" requires the commission to make a finding that the public interest grounds for rejecting the application clearly outweighs the need for affordable housing and the reason therefor. Further, except in the case of a site specific reason for the substantial public interest that would be harmed by the proposed affordable housing development, the commission must also address in writing subsection (D) of § 8-30g
(c)(1) as to why the public interest cannot be protected by reasonable changes to the affordable housing development.
The Christian Activities Council court further held at page 594 "that an affordable land use decision is sustainable if anyone of the reasons stated by the zoning agency is supported by sufficient evidence in the record, the standard articulated by subparagraph (A) of § 8-30g (c)(1), and properly applied to subparagraphs (B), (C) and (D)."
This court reads the Christian Activities Council decision as CT Page 16514 mandating that the local commission must also state which of its reasons for denying the application it believes that the public interests outweighs the need for affordable housing and the reason therefore, and further, normally must state why the public interests cannot be protected by reasonable changes to the affordable housing development.
In discussing the requirement of § 8-30g (c)(1)(D) that the public interest cannot be protected by reasonable changes to the affordable housing development, the Christian Council court stated in part as follows:
 With respect to subparagraph (D) more specifically, however, we conclude that where the zoning commission establishes that there is sufficient evidence in the record to support its determination that there is a substantial public interest that would be harmed by the proposed affordable housing development, and where that interest and harm are site specific, in the sense that no changes to the proposed development reasonably can be determined to protect that interest on that specific site, the zoning commission has satisfied its burden. Because we conclude, moreover, that in the present case the defendant has satisfied its burden under subparagraph (D), we need not decide whether, and to what extent, it had an obligation to devise potential changes to the proposed development rather than to deny the application. . . .
 If the identified public interest is site specific in the sense that we have stated, then by definition there can be no reasonable changes to the affordable housing development that will protect the identified interest.
Attached to this decision and marked as Exhibit A is a copy of the reasons given by the commission in denying the initial application.
The first reason has to do with the size of the proposed building, namely, 77,000 with a footprint of 305 feet by 65 feet and four stories high that will have 92 one bedroom apartments and 42 parking spaces with 40 percent of the units qualifying as affordable housing. The court finds that those reasons are supported by sufficient evidence in the record. The court finds that those reasons are necessary to protect a substantial interest in public health, safety or other matters which the CT Page 16515 commission may legally consider. The court further finds that the commission failed to reasonably conclude that the public interest in those reasons clearly outweigh the need for affordable housing. The defendant commission did address whether the public interest in those reasons could be protected by reasonable changes to the affordable housing development by stating that the applicant should consider alternate building configuration size and location. The commission did not in any way indicate what reasonable changes would be satisfactory. The court therefore finds that the commission has failed to adequately address the issue of whether the public interest could not be protected by reasonable changes to the affordable housing development. The court therefore concludes that this decision is not sustainable as these reasons fail to meet the standard articulated by subparagraph (C) and (D) of § 8-30g (c)(1).
Anther reason given by the commission is that the proposed 92 units would be open to non-residents and therefore there is a reasonable doubt that the existing local need may not be as great as the 92 units requested and there is no guarantee that only present Greenwich elderly residents will be served. The court finds that there is sufficient evidence in the record to sustain that reason. The court further finds that there is not sufficient evidence in the record that this reason is necessary to protect substantial interest in public health, safety or other matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude whether the public interest clearly outweighs the need for affordable housing regarding this reason. The court further finds that the commission failed to reasonably conclude whether the public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore concludes that this decision is not sustainable regarding this reason as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (B), (C) and (D).
Another reason given by the commission is that one of the two co-applicants does not qualify as a non-profit sponsor and therefore cannot be considered a co-applicant. The court finds that there is sufficient evidence in the record to sustain that reason. The court further finds that there is not sufficient evidence in the record that that reason is necessary to protect substantial interest in public health, safety or other matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude whether CT Page 16516 the public interest for that reason clearly outweighs the need for affordable housing. The commission did address whether changes could be made regarding this reason in recommending that the private developer not be included as a co-applicant. This court finds that this decision is not sustainable regarding this reason as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) regarding subparagraphs (B), (C).
Another reason given for denying the application was that the site is environmentally difficult and sensitive with bedrock outcrops, varying slopes and with some as steep as 37 percent, a wetland area/drainage corridor and a storm runoff drainage problem. The commission further stated that "given the severe problems in the area, there is concern that a system that appears conceptually acceptable may not function as effectively as expected and problems will worsen and therefore the plan does not address these concerns beyond a reasonable doubt." While the court finds that there was sufficient evidence in the record regarding the concerns expressed by the commission, the court also finds that an applicant does not have to address these types of concerns beyond a reasonable doubt. Further, it is the commission that has the burden of marshaling the evidence supporting its decision to persuade the court that there is sufficient evidence in the record to support that decision and the reasons given for that decision. An applicant does not have to address concerns that the commission may have by evidence beyond a reasonable doubt. The court does find that there is sufficient evidence in the record that the decision is necessary to protect substantial interests in public health, safety or other matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude that the public interest in those reasons clearly outweigh the need for affordable housing. In addressing the issue of whether the public interest cannot be protected by reasonable changes to the affordable housing development, the commission stated that a revised site plan should submit alternate designs that are environmentally sensitive with assurances of soil/slope stability, non-contamination of ground water, and DEP verification of ground water quality. The commission, however, found that the system as designed appeared to be conceptually acceptable. Given the fact that the commission found that the design of the system was conceptually acceptable, the court finds that the commission has not addressed the issue of whether the public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that CT Page 16517 this decision is not sustainable regarding this reason as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C), (D).
Another reason given by the commission for denying the application related to a memo from the staff of the Inland Wetland Agency regarding existing ground water that may have been contaminated and went on to state that a positive finding cannot be made that the plan meets the standards of § 6-17 (d)(6) and the commission cannot make positive findings for § 22a-19 on this plan. The court finds that this reason is supported by sufficient evidence in the record. In addressing this concern, it is necessary to repeat at this time what the court in ChristianActivities Council, supra, stated at page 597, namely, that:
 [T]he defendant must establish that it reasonably could have concluded, based on the record evidence, that (1) there has been some quantifiable probability — more than a mere possibility but not necessarily amounting to a preponderance of the evidence — that the legitimate [concern] . . . would have been harmed by the zone change. . . .
Thus it is the commission that must establish that there was sufficient evidence in the record for it reasonably to have concluded that the "substantial public interest" in the preservation of wetlands was necessary to protect such public interest. One of the parties in the Christian Activities Council
case had intervened under the provisions of § 22a-19 which has also occurred in this case. The requirement for a quantifiable probability (more than a mere possibility but not necessarily amounting to a preponderance of the evidence) is part of the burden that the commission must meet pursuant to subparagraph (B) of § 8-30g (c)(1). The court does find that this reason is supported by sufficient evidence in the record and therefore subparagraph (A) has been established. The court finds that subparagraph (B) has been met. The Inland Wetland Agency expressed "concern" that existing ground water may have been contaminated, and this contaminated ground water "may" flow off site into the down stream properties. The court finds that the use of the word may was intended to be a quantifiable probability and more than a mere possibility. The court finds that these reasons are necessary to protect substantial interest in the public health, safety or other matters which the commission may legally consider. The court further finds that the commission did not address whether the public interest in this reason clearly CT Page 16518 outweighs the need for affordable housing. The remaining issue involving this reason has to do with whether the applicant has the burden under § 22a-19 (b) to show whether there are other "feasible and prudent alternatives" or whether the commission has the burden of proving under § 8-30g (c)(1)(D) whether the public interest cannot be protected by reasonable changes to the affordable housing development. This court rules that the commission has the burden of showing by sufficient evidence whether the public interest cannot be protected by reasonable changes to the affordable housing development. In the ChristianActivities Council case, there was also an intervention under §21a-19. Notwithstanding such intervention, the ChristianActivities Council court held that if the identified public interest is site specific, then by definition there can be no reasonable changes to the affordable housing development that will protect the identified interest. The Christian ActivitiesCouncil court did not exclude the commission's burden under subparagraph (D) where there has been an intervention under §22a-19. In addition, the general statutory rule of construction is that when two legislative enactments are in conflict and cannot reasonably be reconciled, the latter one repeals the earlier one to the extent of the repugnance. Pizzola v. Planning Zoning Commission, 167 Conn. 202, 206 (1974). Since the affordable housing legislation was enacted after the inland wetland legislation, the affordable housing legislation controls to the extent that it imposes the burden of proof on the commission regarding reasonable changes to be made to protect the public interest.
This court therefore concludes that it is the commission and not the applicant that has the burden of proving of subparagraph (D) of § 8-30g (c) whether public interest cannot be protected by reasonable changes to the affordable housing development. In this case, there was no discussion by the commission as to what reasonable changes could be made in order to protect the public interest. The commission held that "therefore a positive finding cannot be made that the plan meets the standard of § 6-17 (d)(6) and the commission cannot make positive findings per § 22a-19 on this plan." This court therefore concludes that the commission has failed to meet its burden under § 8-30g (c)(1)(C) and (D).
Another ground for denying the application was soil contamination. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that this reason is necessary to protect substantial interest in CT Page 16519 public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in the soil contamination clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of §8-30g (c)(1) subparagraphs (C) and (D).
The commission further rejected the application on the grounds that a verified pleading had been submitted pursuant to §22a-19 alleging unreasonable pollution, impairment or destruction of trees and other natural resources, and the commission should consider alternatives to this proposal in order to make findings that there is a more reasonable prudent alternative that would have less impact on natural resources and that the applicant's presentation and application materials did not provide alternatives to the proposed submitted plan. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that this reason is necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest clearly outweighs the need for affordable housing and that the commission has failed to reasonably conclude whether such public interest cannot be protected by reasonable changes to the affordable housing development. The court finds that the commission had the burden and not the applicant of addressing whether or not reasonable changes could have been made. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D).
The commission further rejected the plan on the grounds that the proposal would add to a large concentration of subsidized housing in one area of the town. The court finds that that reason is supported by sufficient evidence in the record. The court further finds that that reason is not necessary to protect substantial interest in public health, safety or other matters which the commission may legally consider. The court further finds that the commission did not address whether such public interest clearly outweighs the need for affordable housing. The court finds that this reason it sites specific and therefore the commission has met its burden under § 8-30g (c)(1)(D). The CT Page 16520 court finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g
(c)(1)(B) and(C).
The commission also rejected the application on the grounds that the proposed height, bulk and scale of the building presents a mass that far exceeds the scale of housing in adjoining R-6 and R-12 zoned neighborhoods. The court finds that that reason is supported by sufficient evidence in the record and is necessary to protect substantial interest in public health, safety or matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude that the public interest in that reason clearly outweighs the need for affordable housing. The court does find that the commission did address the issue of whether the public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable in that there was not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraph (C).
The commission further rejected the application on the grounds that it is unable to determine whether there is an unsafe or unacceptable potential traffic increase on Quarry Knoll Drive for the elderly residents, pedestrians and drivers. The court finds that that reason is not supported by sufficient evidence in the record in that it is a commission that has the burden of marshaling the evidence. The court further finds that since the commission did not find that there was sufficient evidence in the record to conclude that there would be unsafe or unacceptable potential traffic increase on Quarry Knoll Drive that it has not met the burden of proving that this reason was necessary to protect substantial interest in public health, safety or other matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude that the public interest in this reason clearly outweighs the need for affordable housing. The court finds that the commission has reasonably addressed the issue of whether the public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore concludes that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (1) subparagraphs (A), (B) and (C).
The commission also rejected the application on the grounds CT Page 16521 that "there is also a question of the need for a municipal improvement approval for the housing authority deed stipulation and granting of an access easement over its Quarry Knoll property to Quarry Ridge Greenwich LLC, a for profit corporation and co-applicant on town owned property.
This court has already addressed and rejected those claims in sections I and II of this decision. This court finds that these reasons are not supported by sufficient evidence in the record. The court further finds that the commission failed to reasonably conclude that the public interest in these reasons clearly outweighs the need for affordable housing. The court further finds that the commission failed to address the issue of whether the public interest cannot be protected by reasonable changes in the application. The court therefore finds that these reasons are not sustainable in that there was not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (A), (B), (C) and (D).
The commission further rejected the application on the grounds that this was not the first proposal for development at this location that has been found acceptable as there was a prior proposal for a convalescent nursing home that was rejected because of its size and expected traffic. The court finds that that reason is supported by sufficient evidence in the record. The court further finds that that reason is not necessary to protect substantial interest in public health, safety or other matters which the commission may legally consider. The court further finds that the commission failed to reasonably conclude that the public interest in that reason clearly outweighs the need for affordable housing. The court also finds that the commission failed to reasonably conclude that the public interest in that reason cannot be protected by reasonable changes to the affordable housing development arising from that reason. The court therefore finds that this reason is not sustainable in that there was not sufficient evidence in the record to meet the standard of § 8-30g (1) subparagraph (B), (C) and (D).
The commission also rejected the application on the grounds that there is insufficient outdoor recreation space suitably graded. The court finds that that reason is supported by sufficient evidence in the record. The court further finds that that reason is reasonably necessary to protect substantial interest in public, safety or other matters which the commission may legally consider. The court further finds that the commission CT Page 16522 did not address whether such public interest clearly outweighs the need for affordable housing and further finds that the commission did not address the issue of whether the public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable in that there was not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraph (C) and (D).
The commission further rejected the application on the grounds that the proposal does not meet the intent of the new 1998 plan of conservation and development policies. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that reason is necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to address whether the public interest clearly outweighs the need for affordable housing and also failed to address whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there was not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D)
 III B
After the applicant submitted a revised application and the commission held public hearings on the revised application, the commission again denied the application for reasons stated in Exhibit B attached to this decision. This court will address only those new reasons or substantially revised reasons stated in the decision of the commission marked as Exhibit B. The first reason given by the commission was that "there is a procedural defect in the new application in that the applicant was denied a municipal improvement approval in June, 1998, under the previous preliminary plan and did not request or submit new applications for municipal improvements per section 99 of the Town Charter." The court finds that it is true that the applicant did not submit a new application for municipal improvements. As previously found by this court in section I of this decision, the applicants did not have to seek new municipal improvement approval as it was automatically granted approval for failure of the defendant commission to take action in a timely manner. The court therefore finds that this reason not supported by sufficient evidence in the record. The court does find that municipal improvement CT Page 16523 approval is necessary to protect substantial interests in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in municipal improvement approval clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. This court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of §8-30g (c)(1) subparagraphs (A), (C) and (D).
Another grounds for denying the application was that there was a failure to request an easement as required by the Charter. This grounds was stated in more definitive terms than a similar ground in the initial denial. This court has already found in section II of this decision that there was no need to obtain such an easement. This court further finds that this reason is not supported by sufficient evidence in the record and is not necessary to protect a substantial interest in public health or safety. The court further finds that the commission has failed to reasonably conclude whether the need for the easement clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes in the application. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of §8-30g (c)(1) subparagraphs (A), (B), (C) and (D).
In addition to the reason given in the initial denial regarding nonresident elderly people, the commission also gave as a reason that "yet Greenwich residents may suffer the impacts of the scale and development of the massive apartment building, given unresolved questions about the environmental, site stability and traffic issues. No income information on those on the waiting list have been submitted as requested by P Z in a letter of September 4, 1998 verifying income eligibility for the thirty-seven affordable units per § 8-30g, and therefore no positive finding can be made that the proposal meets the purposes of the PHD-E zone or the needs of present elderly residents or the ability of those on the waiting list to afford the proposed rents. The court finds this grounds is not supported by sufficient evidence in the record and is not necessary to protect substantial interest in public health and safety. It is the commission that has the burden of marshaling the evidence and it cannot simply say that an application can be denied because it CT Page 16524 doesn't have enough evidence to make a particular positive finding. The court further finds that the commission has failed to reasonably conclude that these reasons outweigh the need for affordable housing and has also failed to reasonably conclude whether these reasons cannot be protected by reasonable changes in the affordable housing development. The court therefore finds that these reasons are not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (A), (B), (C) and (D).
The next reason for rejecting the application was that the project developed under § 8-30g standards would yield fewer affordable units than the 100 percent of the units which would be affordable if the issue were addressed under the local zoning regulations of the RPHD-E zone. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that this reason is not necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in this reason clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there was not sufficient evidence in the record to meet the standard of § 30g (c)(1) subparagraphs (B), (C) and (D).
The commission also rejected the application on the grounds that a large amount of blasting and rock cutting would be required and that there are "issues of health and safety for housing authority residents and LeGrande Avenue residents whose homes back up to the site, which the applicant has not provided information on or resolved as part of the submission and therefore the commission cannot make a finding that the plans meet the standards of the building zone regulations. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that this reason is not necessary to protect substantial interest in public health and safety as it is the commission that has the burden of marshaling the evidence rather than the applicant. The court further finds that the commission has failed to reasonably conclude whether the public interest in this reason clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the CT Page 16525 affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (B), (C) and (D).
Another reason given by the commission for rejecting the application had to do with its review of a September 8, 1998 report submitted by an environmental engineering firm. The commission again stated that "therefore a positive finding cannot be made that the plan meets the standards of various regulations and the commission cannot made positive findings per § 22a-19 on the plan." The court finds that the reasons stated by the environmental engineering firm are supported by sufficient evidence in the record. The court further finds that to the extent that the commission was unable to make positive findings, that the burden was on the commission and not on the applicant to marshal the evidence and therefore finds that this reason is not necessary to protect substantial interests in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in these reasons clearly outweigh the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that these reasons are not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (B), (C) and (D).
The commission also rejected the application on the grounds of a memorandum again submitted by the town's conservation director regarding soil contamination in which the commission found that the applicant was deficient and had not adequately addressed or supported a positive environmental finding and therefore various standards are not met. The court finds that this reason is supported by sufficient evidence in the record and is necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in these reasons clearly outweigh the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes in the affordable housing development. The court therefore finds that these reasons are not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D).
CT Page 16526
The commission denied the application on environmental grounds stating in part that the commission "therefore cannot make positive findings at this time and the verified pleading raises questions and unresolved issues and there are significant environment adverse impacts which could potentially adversely affect adjoining residential properties." The court finds that these reasons are supported by sufficient evidence in the record and are necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest clearly outweighs the need for affordable housing and the commission has failed to reasonably conclude whether such public interest cannot be protected by reasonable changes to the affordable housing development, since it is a commission that has the burden and not the applicant of addressing whether such reasonable changes could have been made. The court therefore finds that these reasons are not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g
(c)(1) subparagraphs (C) and (D).
Another reason for rejecting the application was that the rezoning "may exceed the zoning regulation limit of 225 persons within an RPHD-E development if both the existing Quarry Knoll II and this Quarry Ridge development of 92 units were considered one RPHD-E zone property, and therefore the plan does not meet the standards of section 6-36." The court finds that this reason of what may happen is supported by sufficient evidence in the record. The court finds that this reason is not reasonably necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest clearly outweighs the need for affordable housing and that the commission has failed to reasonably conclude whether such public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record in the record to meet the standard of § 8-30g (c)(1) subparagraphs (B), (C) and (D).
The commission also rejected the application on the grounds of various driveway cuts and turning radii. The court finds that this reason is supported by sufficient evidence in the record. The court further finds that this reason is necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably CT Page 16527 conclude whether the public interest regarding the driveway cuts clearly outweigh the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D).
The commission further rejected the application on the grounds that there may be state traffic commission approval required. To the extent, if any, that state traffic commission approval is required, this decision does not eliminate the need for such a requirement. The court does find, however, that the question of state traffic commission approval was not definitely decided by the commission although the fact that the approval may be required was supported by sufficient evidence in the record. The court further finds that this reason is necessary to protect substantial interest in public health and safety. The court further finds the commission has failed to reasonably conclude whether the public interest in obtaining the state traffic commission approval clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D).
The commission also rejected the application on the grounds that there is still insufficient usable, safe and pleasant outdoor recreation space, suitably graded for the independent elderly who will live on the site. The court finds that this reason is supported by sufficient evidence and that it is necessary to protect substantial interests in the public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in outdoor recreation space clearly outweighs the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that this reason is not sustainable as there is not sufficient evidence in the record to meet the standard of §8-30g (c)(1) subparagraphs (C) and (D).
The commission also rejected the application on the grounds CT Page 16528 that a SAMA report (site analysis and market analysis) raised a number of issues. The court does find that that report did raise the issues that are referred to and that therefore those reasons are supported by sufficient evidence in the record. The court further finds that those reasons are necessary to protect substantial interest in public health and safety. The court further finds that this commission has failed to reasonably conclude whether the public interest in those reasons clearly outweigh the need for affordable housing and has also failed to reasonably conclude whether this public interest cannot be protected by reasonable changes to the affordable housing development. To the extent that the commission has raised concerns as to whether the affordable housing development would be required to have 40 percent of its units designated as affordable housing, this court in its final order is requiring that be done. Finally, the commission rejected the application on the grounds that "it is impossible for the Commission to determine that the site is now safe for residential purposes at the size and scale proposed and that potential adverse impacts on the adjacent neighborhoods have been mitigated to the extent possible." The court finds that those reasons are supported by sufficient evidence in the record and are necessary to protect substantial interest in public health and safety. The court further finds that the commission has failed to reasonably conclude whether the public interest in those reasons clearly outweigh the need for affordable housing and has failed to reasonably conclude whether such public interest cannot be protected by reasonable changes to the affordable housing development. The court therefore finds that these reasons are not sustainable as there is not sufficient evidence in the record to meet the standard of § 8-30g (c)(1) subparagraphs (C) and (D).
In summary, the defendant commission failed to make a factual determination as to whether any of the reasons for its decision clearly outweigh the need for affordable housing. It has failed to address the balancing requirement of § 8-30g (c)(1)(C). For that reason, as well as for other reasons stated in this decision, the decision of the defendant commission was arbitrary, illegal and in abuse of discretion. None of the stated reasons of the defendant commission are sufficient to support its decision.
Under the provision of § 8-30g (c), the trial court is permitted to wholly or partly revise, modify, remand or reverse the decision from which the appeal was taken in a manner consistent with the evidence and the record before it in the CT Page 16529 event the commission does not satisfy its burden of proof.
 ORDER
1. The decision of the commission is reversed and all of the approvals requested by the applicants are ordered granted with the following revisions and modifications:
A. The affordable units are to be in perpetual restriction and not limited to thirty years.
B. Forty (40) percent of the 92 units or 37 units are to be affordable.
C. The balance of the units (55 units) are to be rented only to individuals who qualify under federal home loan moderate income guidelines.
Axelrod, J.
EXHIBIT A
TOWN OF GREENWICHsym
Planning and Zoning Commission
Diane W. Fox Town Planner/Zoning Enforcement Coordinator
July 15, 1998
 CERTIFIED MAIL
Mr. Bruce Cohen, Esq. Epstein, Fogarty, Cohen Selby 88 Field Point Road Greenwich, CT 06836-2508
RE: Quarry Ridge Greenwich, LLC/Quarry Knoll II Corp.; application for Municipal Improvement #465 and rezoning request #98-1 from R-6 to R-PHD-E and Special Permit/Sire Plan #1968, as submitted by B. Cohen authorized agent for both the record owner and the Housing Authority, Quarry Knoll II Corp., for the construction of 92 units with an affordable housing component on property at 59 Le Grande Avenue and Quarry Knoll Drive as shown CT Page 16530 on plans by S.E. Minor last dated 1/13/98 and by Buchanan Associates last dated 1/9/98.
Dear Mr. Cohen:
The Planning and Zoning Commission in accordance with Sec. 6-13 through 6-16.1 and Sec. 6-35 through 6-43.1 and Sec. 6-22
of the Building Zone Regulations and Sec. 99 of the Town Charter regarding Municipal Improvements, considered the above-referenced application at a special meeting held on 6/30/98 and took the following action:
Upon a motion made by Mrs. Siefert and seconded by Mrs. Stone the following resolution was adopted. Voting for this motion: Mr. Joyce and Mesdames Siefert, Colombo and Stone. Mr. Eustis voted against the motion to deny.
Mr. Eustis moved approval of the Municipal Improvement and there was no second-motion died; Upon a motion by Mrs. Siefert, seconded by Mrs. Stone to deny the Municipal Improvement: and a motion by Mrs. Siefert, seconded by Mrs. Colombo to deny without prejudice the proposal to re-zone from R-6 to R-PHDE; and upon a motion by Mrs. Scone and seconded by Mrs. Siefert to deny the Special Permit/Site Plan, the following resolution was adopted. Voting for the motions to deny the application: Mr. Joyce and Mesdames Siefert, Colombo and Stone. Mr. Eustis voted against all motions to deny the application.
WHEREAS, the Commission held public hearings on 3/31/98 and 4/21/98 and took all testimony as required by law; and
WHEREAS, applicant proposes to construct a 77,000 sq. ft. building with a footprint of 305 ft. x 65 ft., four stories high, with 92 one-bedroom apartments for independent elderly residents and 42 parking spaces, but only 40% of these units will qualify as affordable under Ct. Statute 8-30g, and the remainder will be moderate income units, on the 2.39-acre site, which is zoned R-6 and permits 24 dwelling units (10/acre). The proposed re-zoning to R-PHDE would allow the 92-unit apartment building at a density of 38 units/acre. The site adjoins another PHDE development by the Housing Authority, Quarry Knoll II, having 40 dwelling units at a density of 25 units/acre; Also in the complex is Quarry Knoll I, zoned R-6 and providing 50 units for the independent elderly; and further, the Commission finds CT Page 16531 that the adjoining residents have relied on the R-6 zoning for many years and did not expect such a drastic change from the 24 permitted units to the 92 units on 2 acres and its potential impacts upon property values, and
WHEREAS, the Commission recognizes that the Town must meet the need for affordable housing for the town's existing elderly residents, (an objective of the 1998 Town Plan of Conservation and Development), submitted by Housing Authority indicates that these units would be open to non-residents and therefore there is a reasonable doubt that the existing local need may not be as great as 92 units requested or warrant . . . and there is no guarantee that only present Greenwich elderly residents will be served; and
WHEREAS, the Commission notes that the application to rezone the property to RPHDE was submitted on behalf of co-applicants — Quarry Knoll II Corporation, a nonprofit sponsor affiliated with the Housing Authority of the Town of Greenwich, and Quarry Ridge Greenwich LLC, a private for profit developer not presenting itself as a non-profit sponsor, and Sec. 6-42 of the Building Zone Regulations requires that the application for a R-PHDE zone be made by the Housing Authority or a non-profit sponsor. Therefore, the Commission Finds that the private developer does not and can not qualify as an applicant or co-applicant under the provision of the RPHD-E zone and the request for rezoning is not supportable; and therefore the joint application does not meet the standards of Sec. 6-42 (a) of the Building Zone Regulations, and
WHEREAS, the Commission notes that the site is environmentally difficult and sensitive with bedrock outcrops, varying slopes with some as steep as 37%, a wetland area/drainage corridor, and a stormwater runoff drainage problem which regularly leaves areas to the east (Overlook Drive) burdened with standing water and flooding problems. The increase in impervious surface (by replacing a small house and out buildings with a massive, institutional structure and associated parking and accessway) requires a state of the art drainage system to avoid exacerbating flooding problems. Given the severe problems in the area there is concern that a system that appears conceptually acceptable may not function as effectively as expected and problems will worsen, and therefore the plan does not address these concerns beyond a reasonable doubt and therefore does not meet the standards of CT Page 16532 Sec. 6-17 (d)(3) of the BZR A large amount of blasting/rock cutting will be required to construct a parking area — issues of safety for Le Grande Avenue residents whose homes back up to the site and these issues must be resolved.
WHEREAS the Commission notes that the staff of the Inland Wetlands Agency in a memo dated 6/26/98 has expressed concern that existing ground water may have been contaminated and this contaminated ground water may flow off site into the downstream properties and out into Long Island Sound, and this issue must be addressed by the CT Department of Environmental Protection or the Greenwich Health Department, and was raised in the verified pleading filed pursuant to Sec. 22a-19 therefore a positive finding cannot be made that the plan meets the standards of Sec. 6-17 (d)(6), and the Commission cannot make positive findings per Sec. 22a-19 on this plan
WHEREAS, the Town's Conservation Director in a letter dated 4/17/98 notes that the site was contaminated with lead and arsenic. While affected oils may have been removed from the site, the question of soil structure stability which can be compromised when ash mixes with soil has not been addressed. The Conservation Director suggests the need for geotechnical analysis by a soils engineer to determine if soils can support proposed structures, particularly the berm for a drainage basin and the parking lot, and therefore the Commission cannot make a positive finding per sec. 6-17 (d)(6), and
WHEREAS, the Commission has received a verified pleading pursuant to Sec. 22a-19 of the Connecticut General Statutes alleging unreasonable pollution, impairment or destruction of trees and other natural resources and the Commission should consider alternatives to this proposal in order to make findings that there is a more reasonable, prudent alternative that would have less impact on natural resources. The Commission finds the applicant's presentation and application materials did not provide alternatives to the proposed submitted plan which the applicant stated had been explored and abandoned. An examination of these alternatives is a requirement placed on the Commission by the filing of the 22a-19 pleading; and the Commission cannot make positive findings at this time and the verified pleading raises questions and unresolved issues of substantial alterations of the wetlands which could be mitigated by other types of developments and alternatives; and further, the Commission finds that the significant increase in site coverage, excavation and CT Page 16533 tree removal could potentially create an adverse impact upon adjoining residential properties and therefore the plan does not meet the standards of Sec. 6-17 (d)(11)(6) and
WHEREAS, the Commission finds that the proposal, if approved, would add to a large concentration of subsidized housing (sponsored by the Housing Authority) in one area of Town — Agnes Morely Heights, Wilbur Peck Court, Town Hall Annex and Quarry Knoll I and II. The Commission has concerns about the long-range planning impacts of such concentration; and that proper long-range planning demands avoiding concentrations of publically supported housing in one area and the location of such housing be spread thru various parts of town, and therefore the plan does not meet the standards of Sec. 6-17 (d)(12), and
WHEREAS, the Commission finds that the proposed height, bulk and scale of this building presents a mass that far exceeds the scale of housing in adjoining R-6 and R-12 zoned neighborhoods and therefore does not meet the standards of Sec. 6-17 (d)(9) (11) and 6-15; and further and the Commission recommends that the proposal be more in keeping with the scale and bulk of the existing neighborhood, perhaps in two or more buildings, and more in keeping with the scale of adjacent Housing Authority housing at Quarry Knoll I and II, both designed at a smaller, more user-friendly scale with several buildings of attached and detached housing;
WHEREAS, the Commission received no revised site plan for Quarry Knoll I and II and is unable to determine whether there is an unsafe or unacceptable potential traffic increase on Quarry Knoll Drive for the elderly residents, pedestrians and drivers. The Commission finds that a revised site plan is needed because access to Quarry Ridge is proposed to be thru Quarry Knoll whose traffic circulation patterns may be changed and a loss of parking spaces may occur on the Quarry Knoll site due to the new cut thru driveway access, and therefore the plan does not meet the standards of Sec. 6-17 (d) (11) and 6-15 (a)(2)(e), (g), and
The Commission notes that the current parking and circulation system was designed years ago to serve the 90 dwelling units in Quarry Knoll I and II developments. The Quarry Ridge building with 92 units was initially intended to address the site from LeGrande Avenue which was quickly seen as not sufficient or adequate to handle the access and traffic impact in that location for the proposal; there is also a question of the need for a CT Page 16534 Municipal Improvement approval for the Housing Authority deed stipulation and granting of an access easement over its Quarry Knoll property to Quarry Ridge Greenwich, LLC, a for profit corporation and co-applicant on town owned property,
WHEREAS, the Commission notes this is not the first proposal for development of 59 Le Grande Avenue that has been found unacceptable. Years ago the PZ Board of Appeals rejected a proposal for a convalescent nursing home because of its size and expected traffic considered unsafe for the Le Grande Avenue area with its narrow streets. Ultimately the Board approved a smaller structure — a 22.000 sq. ft., 2 1/2 story building with a footprint 200 feet by 45 feet. The building was never constructed.
WHEREAS, the Commission finds after studying the plans and the site that there is insufficient outdoor recreation space, suitably graded, for the independent elderly who will live on the site and need walking and seating areas on the grounds of their home in areas large enough for residents to mingle and share activities and therefore the plan does not meet the standards of Sec. 6-17 (d)(6), and Sec. 6-15 (a)(3)(d)(f)(g) and
WHEREAS, the Commission finds that the present proposal does not meet the intent of the new 1998 Plan of Conservation and Development policies and recommendations to preserve residential neighborhoods by strictly enforcing and adhering to zoning regulations and to encourage comfortable and attractive senior housing and further does not meet standards of Sec. 6-15 (Site Plan), 6-17 (Special Permit), Sec. 6-42 (RPHD-E Zone) nor Municipal Improvement standards, and
THEREFORE BE IT RESOLVED, that Quarry Ridge Greenwich, LLC/Quarry Knoll II Corp.; application for Municipal Improvement #465 and rezoning request #98-1 from R-6 to R-PHD-E and Special Permit/Site Plan #1968, as submitted by B. Cohen authorized agent for both the record owner and the Housing Authority, Quarry Knoll II Corp., for the construction of 92 units with an affordable housing component on property at 59 Le Grande Avenue and Quarry Knoll Drive as shown on plans by S.E. Minor last dated 1/13/98 and by Buchanan Associates last dated 1/9/98 is hereby denied without prejudice.
The Commission suggests the applicant reapply with an alternative plan and/or information which addresses the above noted CT Page 16535 deficiencies to the maximum extent possible and including at least:
1. The inclusion of some outdoor recreational use area.
 2. Alternative buildings(s) configuration, size, location, number of units useable open space and recreation areas, preservation of natural topography and resources on the site to enable the Commission to deal with the verified pleading pursuant to GCS 22a-19.
 3. A revised site plan for Quarry Knoll Drive and affected areas of Quarry Knoll I and II (road circulation, parking, road construction to Quarry Ridge, roads that need to be widened, etc.) Show the easement area to enable the Commission and Town Departments to access the impact of the changes on Quarry Knoll I and II sites. Applicant should submit alternative designs that are more proportional to the adjoining neighborhood in design and scale, environmentally sensitive with assurances of soil/slope stability, noncontamination of ground water and DEP verification of ground water quality.
 4. A final decision letter from the Wetlands Agency and Conservation Commission
 5. A plan showing housing density reduced from the present plan.
 6. Do not include Quarry Ridge Greenwich, LLC, a private developer as a co-applicant in any new application to re-zone to PHDE.
 7. Applicant is asked to document and clarify the number of affordable units in the Quarry Ridge project. Testimony indicated 40% would be considered affordable per Ct. State Statute 8-30g and the remainder may or may not qualify under this state law. Would all qualify and be affordable by state or federal standards in perpetuity. At the same time, a letter from the Chairman of the Housing Authority dated 3/31/98 stated that he Quarry Ridge senior complex added to the stock of mixed income affordable housing that HUD is encouraging families in low, moderate and market rate apartments and that "We now wish to do this for adults over age of 62" . . . CT Page 16536 the question is whether some units will be marketable, or whether those will in fact be made affordable to residents by subsidy.
If you have any questions, please call.
Sincerely,
Diane W. Fox Town Planner/Zoning Enforcement Coordinator.
cc Wm. Marr James Maloney David Thompson Ennio Devita Sima Pirnia Michael Aurelia Garo Garabedian Steve Demetri
EXHIBIT B
TOWN OF GREENWICHsym
Planning and Zoning Commission
Diane W. Fox Town Planner/Zoning Enforcement Coordinator
September 30, 1998
 CERTIFIED MAIL
Mr. Bruce Cohen, Esq. Epstein, Fogarty, Cohen Selby 88 Field Point Road Greenwich, CT 06836-2508
RE: Quarry Ridge Greenwich, LLC/Quarry Knoll II Corp.; application for rezoning request #98-4 from R-6 to R-PHD-E and Special Permit/Site Plan #1993 as submitted by B. Cohen authorized agent for both the record owner and the Housing CT Page 16537 Authority, Quarry Knoll II Corp., for the construction of 92 units with an affordable housing component on property at 59 Le Grande Avenue and Quarry Knoll Drive as shown on IWWCA/PZ plans by S.E. Minor last dated May 25, 1998.
Dear Mr. Cohen:
The Planning and Zoning Commission in accordance with Sec. 6-13 through 6-17 and Sec. 6-35 through 6-43.1 and Sec. 6-22 of the Building Zone Regulations, considered the above-referenced final new application at a special public meeting held on September 15, 1998 and took the following action:
Upon a motion made by Mrs. Colombo and seconded by Mrs. Stone, the following resolution was adopted by a 4-0-1 vote. Voting for this motion: Mr. Joyce and Mesdames Siefert, Colombo, and Stone (Mrs. Grant abstained).
WHEREAS, the Commission noted that there is a procedural defect in the present new application in that the applicant was denied a Municipal Improvement approval in June 1998 under the previous preliminary plan and did not request nor submit new applications for Municipal Improvements per Sec. 99 of the Town Charter which requires MI approval for 1) public housing locations, 2) for acquisition of land for major re-design of public real property or public buildings, 3) the extent and location of transportation routes whether public or privately owned, and 4) relocation, major redesign, extension of any street (Quarry Knoll roads); and therefore the Commission considered this an incomplete application It is noted that in 1996 the Housing Authority of the Town of Greenwich and its affiliate Quarry Knoll II Corp. granted an easement to a private for-profit corporation, Le Grande Partners, LLC, to access the Quarry Ridge property at 59 Le Grande Ave., the subject site, over the town-owned roads of the Quarry Knoll II elderly housing development, and the Housing Authority did not request MI approval from the Commission, as required by the Charter, for the granting of the easement, and therefore the Commission considered this an incomplete application; however, since the applicant had submitted this new application per State Statutes CGS 8-30g as a modification and amendment to the original plan, and the applicant has appealed the previous denial of the preliminary plan under 8-30g. the Commission undertook a complete review and consideration of this new plan for rezoning, special permit and site plan and made the CT Page 16538 following findings:
WHEREAS, the Commission held public hearings on 9/10/98 and 9/15/98 and took all testimony as required by law; and
WHEREAS, the Commission adopted the Planned Housing Design-Elderly Zone (PHD-E) — Division 4, Sec. 6-35 through 6-43
of the Building Zone Regulations, for the purpose of enabling the Housing Authority or a non-profit sponsor to construct and manage affordable housing for the elderly. The standards of the zone provide for a large density bonus to be granted (in this case the application is for four times the density permitted in the underlying R-6 zone) to make it possible for ALL units to be eligible for state and/or federal financial assistance and to be offered at affordable rates in perpetuity. All applications are subject to review under Special Permit standards.
WHEREAS, applicant proposes to construct on a 2.39 acre site a 77,000 + sq. ft. building with a footprint of 305 ft. x 65 ft., four stories high, with 92 one-bedroom apartments for independent elderly and non elderly residents (as defined by state statutes), and 42 parking spaces, but only 37 of these units (40%) will qualify as affordable under CGS 8-30g standards (renting at $850/month) and the Planning and Zoning understands that the remainder will be market rate units at $1250 per month. This ratio is not in keeping with the PHD-E zone standards which call for 100% of the units to be affordable. The site is presently zoned R-6 and permits 24 multi-family dwelling units (10/acre). The proposed re-zoning to R-PHDE would allow the 92-unit apartment building at a density of 38 units per acre. The site adjoins an existing PHDE development by the Housing Authority, Quarry Knoll II, having 40 dwelling units in several buildings at a density of 25 units/acre. And the Commission finds that the site proposed for re-zoning does not meet the 1,000 feet standard for separation between developments in the R-PHD-E zones pursuant to Sec. 6-36. Adjacent to this proposed development is Quarry Knoll I, zoned R-6 and providing 50 units for the independent elderly.
East of the site at a lower elevation is Overlook Drive in an R-12 zone (3 single-family dwellings per acre) with some homes less than 300 feet from the proposed apartment building which will be hard to screen visually from residences below, especially night lights when deciduous trees are bare of foliage; further, the Commission finds that the adjoining residents have relied on the CT Page 16539 R-6 zoning for many years and did not expect such a drastic change from the 24 permitted units to the 92 units on 2.39 acres and the potential adverse impacts upon property values, and
WHEREAS, the Commission recognizes that the Town must meet the need for affordable housing for the town's present elderly residents, (an objective of the 1998 Town Plan of Conservation and Development), but material submitted by Housing Authority indicates that these units would be open to non-residents and therefore there is a reasonable doubt that the existing local need is as great as 92 units requested; yet Greenwich residents may suffer the impacts of the scale and development of the massive apartment building, given unresolved questions about environmental, site stability and traffic issues. No income information on those on the waiting lists has been submitted as requested by PZ in a letter of Sept. 4, 1998 verifying income eligibility for the 37 affordable units per CGS 8-30g and therefore no positive finding can be made that the proposal meets the purposes of the PHD-E zone or the needs of present elderly residents or the ability of those on the waiting list to afford the proposed rents.
WHEREAS, the Commission notes that the application to rezone the property to R-PHDE was submitted on behalf of co-applicants — Quarry Knoll II Corporation, a nonprofit sponsor affiliated with the Housing Authority of the Town of Greenwich, and Quarry Ridge Greenwich LLC, a private for profit developer not presenting itself as a non-profit sponsor, and Sec. 6-42 of the Building Zone Regulations requires that the application for a R-PHDE zone be made by the Housing Authority or a non-profit sponsor. Therefore, the Commission finds that the private developer does not and can not qualify as an applicant or co-applicant under the provision of the RPHD-E zone and the request for rezoning by said party is a procedural defect and is not supportable, and therefore the joint application does not meet the standards of Sec. 6-35 and 6-42 of the Building Zone Regulations, and
WHEREAS, the Commission notes that the property, if re-zoned to PHD-E, would provide for 100% of the units to be offered and maintained as affordable units in perpetuity in accordance with the purposes and standards of Sec. 6-35. However, the submission of the application pursuant to CGS 8-30g standards overlaying the application for re-zoning to a PHD-E zone allows the applicant to achieve greater density and a REDUCTION in the number of CT Page 16540 dwellings offered as affordable to 25% of the total and to maintain them as affordable for only 30 years.
The applicant (the Housing Authority) has stated that 40% of the units would be permanently restricted to affordability under8-30g standards and the remaining 60% would be market rate units. In effect, the project developed under 8-30g standards would yield far fewer affordable units than the 100% of the units which would be affordable if the issue were addressed under local zoning regulations of the R-PHD-E zone, and
WHEREAS, the Commission notes that the site is environmentally difficult and sensitive with bedrock outcrops, varying slopes with some as steep as 37%, a wetland area/drainage corridor, and a stormwater runoff drainage problem which regularly leaves areas to the east (Overlook Drive) burdened with standing water and flooding problems. The increase in impervious surface (by replacing a small house and out buildings with a massive, institutional structure and associated parking and accessway) requires a state of the art drainage system to avoid exacerbating flooding problems. Given the severe problems in the area there is concern, and documentation provided by several consultants, that a drainage system that appears conceptually acceptable may not function as effectively as expected and problems could worsen; furthermore water quality problems may still be present, given the known history of site contamination; and therefore the plan does not adequately address these concerns to enable the commission to make a positive finding that the standards of Sec. 6-17 (d)(3) of the Building Zone Regulations have been met; and
WHEREAS, the Commission notes that a large amount of blasting/rock cutting will be required to construct a parking area and driveway, within 10 feet of an existing residential structure housing elderly residents of Quarry Knoll II and the applicant has not addressed the special procedures which must be used to protect this structure and preserve its foundation support as noted in the consultant's report of David Freed of Gibble, Norden and Champion, and the Commission finds that these are issues of health and safety for Housing Authority residents, and Le Grande Avenue residents whose homes back up to the site, which the applicant has not provided information on or resolved as part of their submission, and therefore the Commission cannot make a finding that the plans meet the standards of the Building Zone Regulations, including Sec. 6-1 (a), (1), (3)(7) or (8) and 6-17 (d)(4), (11); and CT Page 16541
WHEREAS, the Commission reviewed the Sept. 8, 1998 report submitted by ALTA, (an environmental engineering firm who had reviewed the applicant's report "Environmental Site Assessment Report-Soil Remediation" prepared by Hygenix, Inc. dated April to December 1997," which was submitted to IWWCA as part of a permit application and which contained information regarding the types of contaminants found on the site and their removal), and finds that the issues of water quality, remaining contaminants and composition of fill on site were not adequately addressed by the applicant, the environmental investigation and remediation of the property are not sufficient and attainment of pertinent environmental cleanup criteria has not been adequately demonstrated for this site; and further the permit issued by IWWCA addresses only the wetland restoration issue and doesn't address the quality of water which had been raised in the IWWCA staff report "that existing ground water may have been contaminated". The Commission expressed concern that contaminants, if any exist in the ground water, may flow off site into downstream properties and out into Long Island Sound, and this issue should have been addressed by the applicant in securing review and comment by the CT Department of Environmental Protection, especially since this issue was raised in the verified pleading filed pursuant to Sec. 22a-19 therefore a positive finding cannot be made that the plan meets the standards of Sec. 6-1 (a)(1). (8) and Sec. 6-17 (d)(1)(6), and the Commission cannot make positive findings per Sec. 22a-19 on this plan, and
WHEREAS, the Town's Conservation Director reiterated in a memo of September 3, 1998 the same concerns previously expressed in a memo dated 4/17/98 which notes that the site was contaminated with lead and arsenic. While affected soils may have been removed from the site, the question of soil structure stability, which can be compromised when ash mixes with soil, has not been addressed. The Conservation Director suggests the need for geotechnical analysis by a soils engineer to determine if soils can support the proposed structures, particularly any footings for the residence in the unknown quality and quantity of fill brought to the site, the berm for a drainage basin and the parking lot; and further the Commission notes that in a report submitted by David Freed of Gibble, Norden, Champion Inc., a consulting engineering firm, these same questions and other geo-technical engineering issues were raised regarding the plans submitted and materials not submitted by the applicant at the CT Page 16542 time of this final plan filing, including no DEP approvals or findings to indicate that the site is compliant with State or Federal DEP/EPA standards and no environmental assessment was submitted, and therefore the Commission finds that the application is deficient and has not adequately addressed or supported a positive environmental finding and therefore the Commission finds that the standards of Sec. 6-1 (a)(1) and Sec. 6-17 (d)(1) and (6) are not met, and
WHEREAS, the Commission has received a verified pleading pursuant to Sec. 22a-19 of the Connecticut General Statutes alleging unreasonable pollution, impairment or destruction of trees and other natural resources and that the Commission should have been presented and considered alternatives to this proposal in order to make findings as to whether there is a more reasonable, feasible, prudent alternative that would have less impact on natural resources. The Commission finds the applicant's presentation and application materials did not provide alternatives to the proposed submitted plan which the applicant stated had been explored and abandoned at the time of preliminary plan and even at this time of the modified final site plan application. The opposition's representatives did present alternatives and discussed these at the hearing on Sept. 10, 1998 but the applicant dismissed these alternatives summarily. New verified pleadings were filed by the opposition on Sept. 10, 1998, which places a requirement on the Commission to examine alternatives under the Sec. 22a-19 pleading; and the Commission has no alternatives submitted by the applicant, and therefore cannot make positive findings at this time and the verified pleading raises questions and unresolved issues, and since the new final plan does not change nor reduce the amount of site coverage, excavation, or tree removal required for this development, the Commission finds that there are significant environmental adverse impacts which could potentially adversely affect adjoining residential properties and therefore the plan does not meet the standards set in the new 1998 Plan of Conservation and Development nor the Building Zone Regulations, Sec. 6-17 (d)(1), (4) and (6) and
WHEREAS, the Commission finds that the proposal, if approved in its present form, would add a large housing project in an area of Town where there is a large concentration of subsidized housing (sponsored by the Housing Authority) — Agnes Morley Heights, Wilbur Peck Court, Town Hall Annex and Quarry Knoll I and II. The Commission has concerns about the long-range planning impacts of CT Page 16543 such concentration; and that proper long-range planning demands avoiding concentrations of publicly supported housing in one area and the location of such housing be spread thru various parts of town, and further the Commission finds that the re-zoning of this property to R-PHD-E does not meet the 1,000 ft. separation standard between properties zoned R-PHD-E and may exceed the zoning regulation limit of 225 persons within an R-PHD-E development if both the existing Quarry Knoll II and this Quarry Ridge development of 92 units were considered one R-PHD-E zoned property, and therefore the plan does not meet the standards of Sec. 6-36; and
WHEREAS, the Commission finds that the proposed height, bulk and scale of this building presents a mass that far exceeds the scale of housing in adjoining R-6 and R-12 zoned neighborhoods and therefore does not meet the standards of Sec. 6-17 (d)(9) (11) and 6-15; and further, and the Commission recommends that the proposal be more in keeping with the scale and bulk of the existing neighborhood, perhaps in two or more buildings, and more in keeping with the scale of adjacent Housing Authority housing at Quarry Knoll I and II, both designed at a smaller scale with several buildings of attached and detached housing; and
WHEREAS, the Commission received no revised site plan for the total layout of one way town roads on Quarry Knoll I and II and the applicant's engineering plan showing the driveway cut into the adjoining Quarry Ridge property does not indicate turning radii to prove beyond a reasonable doubt that moving vans, service and delivery vehicles can safely turn in and out of said new driveway without encroaching upon the oncoming vehicle lanes, and the opposition's traffic study, submitted on Sept. 10, 1998, by DLS Consulting of Windsor CT., notes that access to this 92 unit structure by an SU-30 vehicle (a standard UPS truck) would actually encroach on the exiting lane and there are 4 foot rock walls on both sides of this driveway which would limit sightlines and preclude moving over to the side of a roadway and would necessitate backing up of vehicles — if at all possible. This consultant report also notes that if an SU-30 UPS truck were to enter the service area on the south side of the building, there is no turnaround area available and the truck would have to back all of the way across the building to the northerly service area, and this vehicle cannot negotiate the circle in the middle of the parking area, and needless to say the WB-40 moving van design would have even more difficulty accessing the site than the SU-30 UPS van, and for these reasons therefore, the Commission finds CT Page 16544 that there is an unsafe and unacceptable potential traffic problem for the 92 unit residents as well as the existing elderly residents on Quarry Knoll I and II roads, pedestrians and drivers. The Commission finds that the applicant did not address these turning radii and circulation issues which were raised in the previous letter of denial, and that letter had indicated that a revised site plan is needed because access to Quarry Ridge is proposed to be thru Quarry Knoll whose traffic circulation patterns may need to be changed and the applicant noted that there would be a loss of parking spaces, but did not provide a detailed plan of relocation of said spaces, but made general indications that there were grassed areas that could be converted to parking spaces, without noting specific locations, and therefore this newly modified final plan does not meet the standards of Sec. 6-17 (d)(8) (11) and 6-15 (a)(2)(c)(d)(e), (g), and
The Commission notes that the current parking formula and circulation system was designed years ago to serve the 90 dwelling units in Quarry Knoll I and II developments. The Quarry Ridge building with 92 units was initially intended to access the site from LeGrande Avenue which was quickly seen as not sufficient or adequate to handle the access and traffic impact in that location for the proposal and hence the need and reason why access is shown thru the existing elderly development; however, such access raises the issue for the applicant to submit a request for a Municipal Improvement approval for the Housing Authority deed stipulation and granting of an access easement over its Quarry Knoll property to Quarry Ridge Greenwich, LLC, a for profit corporation and co-applicant on town-owned property; this MI request has not been submitted with this newly modified final plan and therefore the application is deficient and access cannot be granted to a private developer to access thru a town-owned site without said MI, and the Commission finds that this represents a procedural defect in the application, and
WHEREAS, the Commission notes that Robert Bass, a traffic consultant from Milone and McBroom, has indicated that this project, in conjunction with the adjacent Quarry Knoll I and II, may exceed 100,000 sq. ft and 200 parking spaces which are the thresholds for the State Traffic Commission (STC) to become involved and a determination from the STC is needed as to whether or not this development should be considered a major traffic generator and therefore the Commission notes that if such a finding is made by the STC, major roadway design changes within CT Page 16545 the existing Quarry Knoll I and II and adjacent roads, such as Davis and East Elm street may be needed, and therefore the application is deficient in providing sufficient information to address these issues, and further the Commission notes that the 42 parking spaces provided for these 92 units is insufficient because the 56 market rate units will likely have more than one person per household and with incomes sufficient to pay over $1250 per month, could have more than one car and therefore Sec. 6-155 of the BZR requiring 1 parking space per one bedroom unit should be used for parking calculations which would then require 56 spaces for those units and 12 spaces for the 8-30g elderly 36 units (ratio of 1 space per 3 elderly units in the R-PHDE zone) for a total of 68 parking spaces to be required on site for the 92 units, and therefore the Commission finds that the plans do not meet the standards of Sec. 6-155, 6-15 (a)(2)(d), and 6-17, and
WHEREAS, the Commission notes this is not the first proposal for development of 59 Le Grande Avenue that has been found unacceptable. Years ago the PZ Board of Appeals rejected a proposal for a convalescent nursing home because of its size and expected traffic considered unsafe for the Le Grande Avenue area with its narrow streets. Ultimately the Board approved a smaller structure — a 22,000 sq. ft., 2 1/2 story building with a footprint 200 feet by 45 feet. The building was never constructed.
WHEREAS, the Commission finds that even on the newly modified final plans, that there is still insufficient useable safe and pleasant outdoor recreation space, suitably graded, for the independent elderly who will live on the site and need walking and seating areas on the grounds of their home in areas large enough for residents to mingle and share activities and therefore the new plan still does not meet the standards of Sec. 6-17 (d)(6), and Sec. 6-15 (a)(3)(d)(f)(g) and
WHEREAS, the Commission finds that the present proposal does not meet the intent of the new 1998 Plan of Conservation and Development policies and recommendations to preserve existing land use patterns and preserve character of residential neighborhoods, to avoid large increases in impervious surfaces so as to preclude flooding and drainage impacts upon residential areas by strictly enforcing and adhering to zoning regulations and to encourage comfortable and attractive senior housing and further does not meet standards of Sec. 6-15 (Site Plan), 6-17 CT Page 16546 (Special Permit), and Secs. 6-35-42 (RPHD-E Zone), and
WHEREAS, the Commission finds that the SAMA report (Site Analysis and Market Analysis) which the applicant submitted to HUD which is required for HUD insured mortgages, and submitted by the applicant at the close of the hearing on September 15 did not provide evidence of income eligibility of the 137 persons on the Housing Authority waiting list (55 non-seniors, 54 non-residents) to show that there is a need or ability to pay for these units with rents of $850 — 1250 a month, nor did the report confirm that the site is now compliant with all federal and state standards for construction on a site that was formerly a contaminated site, no additional moneys are shown for additional geo-technical studies for soils, fill analysis or structural analysis vis a vis existing bedrock, and it is unclear whether HUD was aware of the need to do further testing and analysis regarding these issues on site, and further that SAMA report states that the project could still be feasible with less than 92 units, and the report indicated that 75% of the units were to be market rate and only 25% were to be deed restricted compared to what the applicant has represented to the Commission to be 40% to be affordable under8-30g so there is a question as to the certainty of the number of affordable units, and in fact the applicant has not submitted with either application a copy of the proposed Declaration of Restrictions for the Affordable Housing units to assure compliance with 8-30g nor indicated on the plans which units are to be permanently deed restricted to show that 40% of the units as represented by the applicants will be earmarked for 8-30g,
WHEREAS the Commission finds that sufficient evidence has been presented regarding potential environmental and geotechnical problems that it is impossible for the commission to determine that the site is now safe for residential purposes at the size and scale proposed and that potential adverse impacts on the adjacent neighborhoods have been mitigated to the extent possible; and in the interests of protecting substantial public interests in the health, safety and welfare of the public, further steps need to be taken to resolve concerns; and,
WHEREAS, the Commission notes that its decision to reject the preliminary application on June 30, 1998 and to suggest that a new plan be submitted showing reduced housing density did not elicit a response from the applicant that such reduced density would have a substantial adverse impact on the viability of the affordable housing development or the degree of affordability of CT Page 16547 the affordable dwelling units;, and
THEREFORE BE IT RESOLVED, that application #98-4 as submitted by Bruce Cohen, authorized agent for Quarry Ridge Greenwich LLC, record owner and Quarry Knoll II CORP., contract purchaser, for a change of zone from the R-6 to R-PHD-E and for a map change for the subject property and for a site plan and special permit approval for the construction of 92 dwelling units for elderly residents being proposed under CGS Sec. 8-30g on 2.4 acres of property at 59 Le Grande Ave. is hereby denied.
The Commission suggests the applicant reapply with alternative plans and other information which addresses the above noted deficiencies to the maximum extent possible and including at least:
 1. The inclusion of some significant amounts of really useable outdoor recreation areas and space in convenient and safe locations for residents and visitors.
 2. Alternative buildings(s) configuration, size, location, number of units useable open space and recreation areas, preservation of natural topography and resources on the site to enable the Commission to deal with the verified pleadings pursuant to GCS 22a-19. Applicant should submit alternative designs that are more proportional to the adjoining neighborhood in design and scale, environmentally sensitive with assurances of soil/slope stability, fill analysis, non-contamination of ground water and DEP verification of ground water quality.
 3. A revised site plan for Quarry Knoll Drive and affected areas of Quarry Knoll I and II (road circulation, parking, road construction to Quarry Ridge, roads that may need to be widened, etc.) Show the easement area to enable the Commission and Town Departments to assess the impact of the changes on Quarry Knoll I and II sites.
 4. A plan showing housing density reduced from the present plan.
 5. The actual list of 137 persons (with names and addresses blocked out but zip codes left in) with income criteria and eligibility ranking, and date of inclusion on the Housing Authority's list.
CT Page 16548
 6. Do not include Quarry Ridge Greenwich, LLC, a private developer as a co-applicant in any new application to re-zone to PHDE.
 7. Applicant is asked to document and clarify the number of affordable units in the Quarry Ridge project. Testimony indicated 40% would be considered affordable per CT. State Statute 8-30g and the remainder would not qualify under this state law, and would be market rate units . . .
If you have any questions, please call.
Sincerely,
Diane W. Fox Town Planner/Zoning Enforcement Coordinator.
cc Wm. Marr James Maloney David Thompson Ennio Devita Sima Pirnia Michael Aurelia Garo Garabedian Steve Demetri
sym [EDITORS' NOTE: THE SYMBOL IS ELECTRONICALLY NON-TRANSFERRABLE.] CT Page 16549